UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK          CASE No.: <u>13 cv 2368</u>
-------------------------------------------------------------

RALPH SAMS

                     Plaintiff,          AMENDED COMPLAINT

        -against-                 PLAINTIFF(S) DEMAND
                                                                       TRIAL BY JURY

THE CITY OF NEW YORK,
DET. FAWAD KHAN,
P.O. "JANE DOE" AND
"JOHN DOE" 1-10.

1'through'10 inclusive,
the names of the last defendants
being fictitious, the true names
of the defendants being unknown
to the plaintiff(s).

                     Defendant(s)

-------------------------------------------------------------

     Plaintiff, RALPH SAMS, by his attorney, Paul Hale Esq., complaining of the defendants, The City of New York, DET. FAWAD KHAN, Police Officers "John" and "Jane" Doe, collectively referred to as the Defendants, upon information and belief alleges as follows:

### NATURE OF THE ACTION

1.    This is an action at law to redress the deprivation of rights secured to the plaintiff under color of statute, ordinance, regulation, custom, and or to redress the deprivation of rights, privileges, and immunities secured to the plaintiff by the Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States, and by Title 42 U.S.C.

§ 1983, § 1988 [and § 1985], [and arising under the law and statutes of the State of New York].

2. This is an action to further seek compensation for the serious and permanent personal injuries sustained by the plaintiff, as a result of the negligence of the defendants, perpetrated while said defendant police officers were in the process of illegally and unlawfully arresting plaintiff.

## JURISDICTION

3. The jurisdiction of this Court is invoked under 28 U.S.C. §1343(3), this being an action authorized by law to redress the deprivation of rights secured under color of state and city law, statute, ordinance, regulation, custom and usage of a right, privilege and immunity secured to the plaintiff by the Fourth, Fifth, Eighth and Fourteenth Amendment to the Constitution of the United States.

4. All causes of action not relying exclusively on the aforementioned federal causes of action as a basis of this Court's jurisdiction are based on the Court's supplemental jurisdiction pursuant to 28 U.S.C. §1367 to hear state law causes of action. The events, parties, transactions, and injuries that form the basis of plaintiff's federal claims are identical to the events, parties, transactions, and injuries that form the basis of plaintiff's claims under applicable State and City laws.

5. As the deprivation of rights complained of herein occurred within the Eastern District of New York, venue is proper in this district pursuant to 28 U.S.C. §§1391 (b) and (c).

## PARTIES

6. Plaintiff RALPH SAMS resides in New York and is a resident of the State of New York.

7. DET. FAWAD KHAN at all times relevant to this action was a police officer with the City of New York Police Department and acting under color of state law.  He is being sued in both their individual and official capacity.

8. Defendants Police Officers are, and at all times relevant to this action were, officers of the City of New York Police Department and acting under color of state law. Said officers are being sued in both their individual and official capacities.

9. The Defendant, City of New York is a municipality in the State of New York and employs the Defendants Police Officers.

**FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

10. On or about 10/27/12 RALPH SAMS was arrested for selling $10.00 worth of marijuana by members of the NYPD's Brooklyn North Narcotics task force in front of 118 Thompkins Ave.  in Brooklyn, NY.

11. During the arrest, DET. FAWAD KHAN broke RALPH SAMS left thumb.  MR. SAMS is left hand dominant.

12. MR. SAMS believes this was done on purpose because DET. FAWAD KHAN said, "That's a little trick we know" after MR. SAMS complained about his thumb being broken.

13. It should also be noted that MR. SAMS was not charged with Resisting Arrest, Assault or Obstructing Governmental Administration.

14. DET. FAWAD KHAN then placed RALPH SAMS in the back of a van handcuffed and purposely drove erratically to exacerbate RALPH SAMS injuries.  MR. SAMS was intentionally not seat belted in back of the van so he would be subjected to the violent

and aggressive jerks the van made while DET. FAWAD KHAN was driving. The benches in the back of the van made of hard metal and offer no cushioning for the handcuffed prisoners. During this drive the arresting officers were laughing and making jokes about MR. SAMS.

15. MR. SAMS was initially taken to Woodhull hospital. There, x-rays were taken and mis-read. The Woodhull radiologist reported there was no fracture. However, there was indeed an avulsion fracture[1] to his left thumb as evidenced by x-rays taken contemporaneously while in custody.

16. During MR. SAMS treatment in Woodhull hospital DET. FAWAD KHAN continually berated him and told nurses and staff that he was faking it. MR. SAMS contends that the misdiagnosis was due in part to DET. FAWAD KHAN'S interactions with hospital staff.

17. RALPH SAMS was next treated at Riker's Island.

18. MR. SAMS was again misdiagnosed at Rikers Island and told he only had a dislocated thumb - for which he was placed into a soft cast for approximately 2 months.

19. RALPH SAMS still suffers from a deformity to his thumb which needs corrective surgery. The surgery is tentatively scheduled to take place at Brooklyn Hospital Center on July 24, 2013.

20. A Notice of Claim was filed on 12/10/12 (Claim No. 2012PI030460)

21. As a direct and proximate result of defendants' actions, plaintiff suffered and continues to suffer injuries, including but not limited to emotional distress, nightmares, panic attacks, mental anguish and unwarranted severe anger bouts some or all of which may be

---

[1] An avulsion fracture occurs when a tendon or ligament, along with a piece of the bone it's attached to, gets pulled away from the main part of the bone. If the bone fragment and main bone are too far apart to fuse naturally, surgery may be necessary to reunite them. Surgery also may be necessary later to remove the painful, fibrous tissue (soft tissue union) that sometimes forms around unhealed fractures. "Avulsion fracture: How is it treated?" Mayo Clinic. April 8, 2010

permanent.

22. As a direct and proximate result of defendants' actions, plaintiff suffered and continues to suffer, mental anguish, repetitive injury, psychological and emotional distress, and physical pain and suffering, some or all of which may be permanent.

23. As a direct and proximate result of his unlawful detention, assault, confinement, Plaintiff has lived in terror of their attack, and continues to suffer from nightmares, are fearful of going outside and when he sees the police, and suffer various emotional attacks, in addition, and have been unable to function normally which has caused a severe strain and breakdown in his personal relationships, in and outside of his home.

24. As a direct and proximate result of defendants' actions, plaintiff was deprived of rights, privileges and immunities under the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution and the laws of the City of New York and the State of New York.

25. The actions of defendants, acting under color of State law, deprived plaintiff of his rights, privileges and immunities under the laws and Constitution of the United States; in particular, the rights to be secure in his person and property, to be free from the excessive use of force and from malicious prosecution, abuse of process, and the right to due process.

26. By these actions, defendants have deprived plaintiff of rights secured by the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. Section 1983.

27. This action has been commenced within one year and ninety days after the happening of the event upon which the claim is based.

## AS A FIRST CAUSE OF ACTION:
**42 U.S.C Section 1983-against all Defendants.**

28. Plaintiff hereby restates all paragraphs above of this complaint, as though fully set forth below.

29. By detaining and imprisoning plaintiff, without justification, probable cause or reasonable suspicion, using excessive force, and assaulting him, the Officers, Defendants deprived Plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. Section 1983, including, but not limited to, rights guaranteed by the Fourth, Fifth, Eighth and Fourteenth Amendments of the United States Constitution.

30. In addition, the Defendants conspired among themselves to deprive plaintiff of his constitutional rights secured by 42 U.S.C. Section 1983, and by the Fourth, Fifth, Eighth and Fourteenth Amendments to United States Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

31. The Defendant acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD Officers. Said acts by the Defendants Officers were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Defendants acted willfully, knowingly, and with the specific intent to deprive the Plaintiff of his constitutional rights secured by 42 U.S.C. Section 1983, and by the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

32. As a direct and proximate cause of the acts of the defendants, plaintiff suffered the following injuries and damages:

    A. Excessive force imposed upon him;

    B. Summary punishment imposed upon him; and

    C. Denied equal protection under the law.

33. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages herein before stated.

## AS A SECOND CAUSE OF ACTION:
### New York State Constitution, Art. 1 Section 12 against all Defendants

34. Plaintiff hereby restates all paragraphs of this complaint, as though fully set forth below.

35. By detaining and imprisoning plaintiff without probable cause or reasonable suspicion, using excessive force, and assaulting them, the Defendant Officer deprived Plaintiff of rights, remedies, privileges, and immunities guaranteed to every New Yorker by Article 1, Section 12 of the New York Constitution.

36. In addition, the Defendant Officers conspired among themselves to deprive plaintiff of his constitutional rights secured by Article 1, Section 12 of the New York Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

37. The Defendants Officers acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD Officers. Said acts by the Defendants Officers were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Defendants acted willfully, knowingly, and with the specific intent to deprive the Plaintiff of his constitutional rights secured by Article 1, Section 12 of the New York Constitution.

38. Defendants, their officers, attorneys, agents, servants and employees were responsible for Plaintiff's deprivation of his state constitutional rights.  Defendants, as employer, are, is responsible for their wrongdoing under the <u>doctrine of respondeat superior.</u>

39. As a direct and proximate result of the misconduct and abuse of authority detailed above,

plaintiff sustained the damages herein-before alleged.

## AS A THIRD CAUSE OF ACTION:
### Assault and Battery--all Defendants

40. Plaintiff hereby restates all paragraphs of this complaint, as though fully set forth below.

41. In physically assaulting, handcuffing, threatening, intimidating plaintiff, the Defendants Officers, acting in their capacities as NYPD Officers, and within the scope of their employment, each committed a willful, unlawful, unwarranted, and intentional assault and battery upon plaintiff.

42. As a direct and proximate result of the misconduct and abuse of authority detained above, Plaintiff sustained the damages hereinbefore stated.

## AS A FOURTH CAUSE OF ACTION:
### Intentional Infliction of Emotional Distress-all Defendants

43. The Plaintiff hereby restates all paragraphs of this complaint, as though fully set forth below.

44. The Defendants engaged in extreme and outrageous conduct, intentionally and recklessly causing severe emotional distress to plaintiff.

45. Plaintiff's emotional distress has damaged his personal and professional life because of the severe mental pain and anguish which were inflicted through deliberate and malicious detention and imprisonment by the Defendants Officers.

46. Defendants, their officers, agents servants, and employees were responsible for the intentional infliction of emotional distress suffered by the Plaintiff at the hands of the Defendants' employees. Defendants, as employers, are responsible for their wrongdoing under the doctrine of respondeat superior.

47. As a direct and proximate result of the misconduct and abuse of authority detailed above,

plaintiff sustained the damages herein-before stated.

## AS A FIFTH CAUSE OF ACTION:
**Negligent and Retention of Employment Services-against all Defendants.**

48. Plaintiff hereby restates all paragraphs of this Complaint, as though fully set forth below.

49. Upon information and belief, defendants, owed a duty of care to plaintiff to prevent the physical and mental abuse sustained by plaintiff.

50. Upon information and belief, defendants owed a duty of care to plaintiff because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated that an injury to plaintiff or to those in a like situation would probably result from this conduct.

51. Upon information and belief, defendants knew or should have known through the exercise of reasonable diligence that their employees were not prudent.

52. Upon information and belief, defendants' negligence in hiring and retaining the employees Defendants proximately caused Plaintiff's injuries.

53. Upon information and belief, because of the defendant's negligent hiring and retention of the aforementioned Defendants, Plaintiff incurred significant and lasting injuries.

## AS A SIXTH CAUSE OF ACTION:
**Negligence against all Defendants**

54. Plaintiff repeats and realleges all paragraphs as if each paragraph is repeated verbatim herein.

55. As a direct and proximate result of the negligent acts of all the defendants, City of New York as set forth herein, plaintiffs suffered physical injury, conscious pain and suffering, medical expenses, lost wages, and severe mental anguish.

56. That by reason of the said negligence, plaintiff suffered and still suffers bodily injuries,

became sick, sore, lame and disabled and have remained sick, sore, lame and disabled since the aforesaid incident; has suffered great pain, agony and mental anguish and is informed and verily believes that they will continue to suffer for a long time to come and that said injuries are permanent; has suffered economic loss inasmuch as she was forced to, and are still forced to expend sums of money on medical treatment; that she was deprived of her pursuits and interests and verily believes that in the future she will continue to be deprived of such pursuits; and that said injuries are permanent.

57. This action falls within one or more of the exceptions of the New York State Civil Practice Law and Rules §1602.

## AS A SEVENTH CAUSE OF ACTION:
*Monell* **claim**[2]

58. Defendant City of New York, as a matter of policy and practice, has with deliberate indifference failed to properly sanction or discipline police officers including the defendants in this case, for violations of the constitutional rights of citizens, thereby causing police officers including defendants in this case, to engage in unlawful conduct.

59. The City's continuing failure to deter police misconduct has led to ever increasing numbers of lawsuits for repeat routine misconduct by the same officers, same units and same precincts. In 2009, New York City has seen a 46 percent jump in payouts to settle claims against the NYPD and has paid out more than $117 million in fiscal year 2009, compared to $80 million in 2008.[3] In the past ten years, the City of New York has paid

---

[2] *Monell v. City of New York Department of Social Services*, 436 U.S. 658
[3] Mayor Michael Bloomberg's preliminary Management Report for FY 2009, available at http://www.nyc.gov/html/ops/downloads/pdf/_mmr/nypd.pdf, see page 115, last visited on February 18, 2010.

nearly a billion dollars on lawsuits brought against the NYPD.[4]

60. The widely held assumption is that civil rights lawsuits deter police misconduct. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. Wyatt v. Cole, 504 U.S. 158, 161, (1992) citing Carey v. Piphus, 435 U.S. 247, 254-257, (1978). "As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts." See Hudson v. Michigan 547 U.S. 586, 598 (2006) citing Correctional Services Corp. v. Malesko, 534 U.S. 61, 70 (2001) and Nix v. Williams, 467 U.S. 431, 446, (1984). "It is almost axiomatic that the threat of damages has a deterrent effect (citation omitted) surely particularly so when the individual official faces personal financial liability." Carlson v. Green, 446 U.S. 14, 21, (1980), citing Imbler v. Pachtman, 424 U.S. 409, 442, and footnote 6 (1976).

61. However, the City of New York has isolated NYPD officers from accountability for its civil rights lawsuits and, as a result, is preventing civil rights lawsuits from having any deterrent value to the City, the NYPD or its officers. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the expense to the City of the officers' lawsuit liability, even after multiple lawsuits. In 1999, former Comptroller Alan Hevesi reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers. This "total disconnect" between officers' liability and NYPD discipline, results in a system where

---

[4] "NYPD Has Paid Out Nearly $1 Billion in Claims Over Past Decade," by Associated Press Writers Colleen Long and Jennifer Peltz, http://www.law.com/jsp/article.jsp?id=1202473432953 , October 15, 2010 last available on December 9, 2010.

the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests. The City Council, Government Operations Committee, despite being alerted at a City Council hearing on December 12, 2009, and on other occasions, to the obvious problem of officers and precincts with a disproportionate responsibility for civil rights lawsuit liability, has failed to take action to hold officers or precincts accountable. It has likewise failed to hold an investigative hearing into what extent specific officers, units and precincts are disproportionately responsible for New York City civil rights lawsuits.

62. Upon information and belief, DET. FAWAD KHAN has been sued in five other law suits prior to this lawsuit:

   a. 1:06-cv-05459-NGG-KAM   Berrios v. City of New York et al
      filed 10/06/06   closed 10/31/07

   b. 1:09-cv-01088-RRM-RML   Jones v. The City of New York et al
      filed 03/17/09

   c. 1:09-cv-05054-FB-MDG   Walker v. The City of New York et al
      filed 11/17/09   closed 04/08/11

   d. 1:10-cv-03461-JG-RER   Spears v. City of New York et al
      filed 07/28/10   closed 05/29/13

   e. 1:11-cv-02696-NGG-VVP   Ingram v. The City of New York et al
      filed 06/06/11   closed 02/29/12

63. The City of New York does not track the lawsuits filed against DET. FAWAD KHAN or other officers and likewise does not track the amount of lawsuits filed per precinct or command. There is no mechanism through which Commanding Officers or Deputy

Inspectors are alerted or can track how much liability their officers are within their precinct or command in terms of civil rights lawsuits. DET. FAWAD KHAN duties have not been modified as a result of his multiple lawsuits. His conduct, despite multiple civil rights lawsuits, sends a message to new police officers that the City of New York tolerates civil rights violations and that they may commit civil rights violations without punishment. The City's failure to review and digest lawsuits for patterns of misconduct and essentially turn a blind eye towards officers involved in multiple incidents of police brutality caused plaintiff's damages.

64. The City has further isolated the NYPD from being deterred by judicial review by not establishing a system through which to notify individual officers or their supervisors of unfavorable judicial review of their conduct in suppression hearings and criminal trials. Without this notification, improper search and seizure practices and incredible testimony go uncorrected, problematic supervision or leadership at the precinct level goes ignored, and repeated misconduct by individual officers goes unaccounted for.  Even occasional judicial findings in both criminal and civil court that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

65. The aforesaid event underlying plaintiff's factual allegations was not an isolated incident nor was it isolated to NYPD officers, despite evidence of their repeat routine misconduct. The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers unlawfully bring charges against citizens with no legal basis, use excessive force against citizens and create charges in an effort to cover up their misconduct, perjure

themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

66. All of the aforementioned has created a climate where police officers and detectives lie to prosecutors, in police paperwork and charging instruments, and testify falsely, with no fear of reprisal. "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged." See Colon v. City of New York, et al, 2009 WL 4263362 (E.D.N.Y.)(Weinstein, J.).

67. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiff's civil rights, without fear of reprisal.

68. Plaintiff has been damaged as a result of the deliberate indifference of the Defendant City.

69. As a direct and proximate cause of the acts of the defendants, plaintiff suffered the following injuries and damages:

      A. Deprivation of liberty without due process of law;

      B. Excessive force imposed upon him;

      C. Summary punishment imposed upon him; and

70. Denied equal protection under the law.

**WHEREFORE,** plaintiff respectfully requests judgment against the Defendants as follows:

1. On the First Cause of Action against all the defendants, compensatory and punitive damages in an amount to be determined at trial, and reasonable attorneys' fees and costs under 42 U.S.C. Section 1988;

2. On the Second Cause of Action, against all Defendants, compensatory damages in an amount to be determined at trial, and punitive damages against the Officers Defendants in an amount to be determined at trial;

3. On the Third Cause of Action, against all Defendants, compensatory damages in an amount to be determined at trial, punitive damages against the Defendants in an amount to be determined at trial;

4. On the Fourth Cause of Action, against all Defendants, compensatory damages in an amount to be determined at trial, punitive damages against the Defendants in an amount to be determined at trial;

5. On the Fifth Cause of Action, against all Defendants, compensatory damages in an amount to be determined at trial, punitive damages against the Defendants in an amount to be determined at trial;

6. On the Sixth Cause of Action, against all defendants, compensatory damages in an amount to be determined at trial; and

7. On the Seventh Cause of Action, against all Defendants, compensatory damages in an amount to be determined at trial, punitive damages against the Defendants in an amount to be determined at trial;

8. Such other and further relief as this Court may deem necessary in the interest of justice.

Dated:

6/26/2013
Brooklyn, New York

                                        Respectfully Submitted

                                        _____

By:    Paul Hale, Esq
26 Court St. Ste 913
Brooklyn, NY 11242
(718) 554-7344